UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARGARET VELEZ-AGUILAR, on behalf of herself and all others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>SEQUIUM ASSET SOLUTIONS, LLC, INC, CACH, LLC,<br><br>Defendants. | Civ. No. 2:21-cv-14046 (WJM)<br><br>OPINION |

In this action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et. seq.*, Defendants Sequium Asset Solutions, LLC ("Sequium") and CACH, LLC ("CACH") (jointly "Defendants") move to dismiss Plaintiff Margaret Velez-Aguilar's ("Plaintiff" or "Velez-Aguilar") Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). ECF No. 17. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Defendants' motion to dismiss for lack of standing or on *res judicata*, Entire Controversy, or *Rooker-Feldman* grounds is **denied**. Defendants' motion to dismiss for failure to state a claim is **granted**.

**I.     Background**

On May 14, 2009, CACH initiated an action in New Jersey state court against Velez-Aguilar ("Collection Action") seeking judgment for $3,745.03, the balance due on Velez-Aguilar's credit card account at the time that CACH purchased that account and debt from Maryland National Bank. Collection Action Compl., ¶¶ 1, 3, ECF No. 17-2, Exh. A. On August 4, 2009, the court entered judgment in favor of CACH, effective July 15, 2009, for $4,052.78 inclusive of attorneys' fees in the amount of $93.05 and costs of $57 ("Collection Action Judgment"). ECF No. 17-4, Exh. C.

On September 29, 2009, CACH filed a Writ of Execution. ECF No. 17-7, Exh. F. The court entered a Writ in the amount of $4,518.78, ECF No. 17-8, Exh. G, and issued a Writ of Execution against Goods and Chattels to enforce the Writ, ECF No. 17-9, Exh. H. On May 27, 2011, the court entered a second Writ for $4,687.79, ECF No. 17-13, Exh. L. A third Writ was entered in the amount of $4,733.99. ECF No. 17-16, Exh. O.

1

On March 24, 2021, Sequium, a debt collection agency, sent Plaintiff a letter ("Collection Letter") indicating that CACH had "purchased the account," and identified CACH as the "current creditor" and "Maryland National Bank, N.A." as the original creditor. Amended Class Action Complaint, ("Amended Complaint"), Exh. A, ECF No. 16. The Collection Letter further stated: "the judgment that was awarded on 07/15/2009 remains unresolved. This is the date on which the balance became due." *Id.* The "Total Due" was listed as $4,424.60. *Id.* The settlement offered in the Collection Letter was to "resolve" Plaintiff's "unpaid balance" and "settle [Plaintiff's] account for 65% of the balance due." Additionally, the Collection Letter provided that CACH was "willing to work with you on a payment plan" and encouraged Plaintiff to contact Sequium for help "in putting this matter behind you." *Id.*

Plaintiff initiated the current action against Defendants Sequium and CACH in federal court on July 23, 2021. ECF No. 1. On October 18, 2021, Plaintiff filed a one-count Amended Complaint seeking damages as well as declaratory and injunctive relief arising from Defendants' alleged violations of the FDCPA. ECF No. 16. Specifically, Plaintiff contends that Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(1) of the FDCPA because the Collection Letter did not itemize or breakdown the amount of the Maryland National Bank obligation by principal, interest, fees and other charges, failed to disclose that the amount due on the debt included an amount for interest, fees, attorney fees, and other costs and that it was subject to increase due to interest, fees and costs. *Id.* at ¶¶ 46-49. Plaintiff also claims that Defendants violated §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10) of the FDCPA by falsely representing that a statutory attorney fee was owed to CACH rather than to the attorney for the prevailing party in the Collection Action. *Id.* at ¶¶ 50-55.

Defendants now move to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that Plaintiff lacks standing and that her claims are barred by *res judicata*, the Entire Controversy Doctrine[1] and by the *Rooker-Feldman* doctrine. Additionally, Defendants assert that dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) for failure to state a claim under the FDCPA. Each of these contentions will be addressed in turn.

---

[1] The Entire Controversy and *res judicata* doctrines are improper grounds to challenge subject matter jurisdiction. *See Rycoline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) ("[A]pplication of the entire controversy doctrine, also an affirmative defense, does not defeat the subject matter jurisdiction of a federal court."). The Court may, however, properly consider the Entire Controversy Doctrine as grounds for a 12(b)(6) motion to dismiss where the "entire controversy bar is apparent on the face of the Complaint." *Mason v. US Bank*, 2016 WL 7189828, at *4 (D.N.J. Dec. 12, 2016).

2

## II. Discussion

### A. Rule 12(b)(1) Motion to Dismiss

#### 1. Standard

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Art. III § 2. Plaintiffs must "clearly ... allege facts demonstrating" all three elements of constitutional standing: (1) an "injury in fact," (2) that is "fairly traceable" to a defendant's conduct, and that (3) is likely to be redressed by favorable judicial intervention. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992). To establish an "injury in fact," a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations omitted). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

The Supreme Court set forth two considerations in determining whether "an intangible harm constitutes injury in fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), *as revised* (May 24, 2016). The first inquiry is "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* The second consideration is the judgment of Congress "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id* at 341. "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 578 U.S. at 341 (citing *Lujan*, 504 U.S. at 578, 112 S.Ct. 2130)).

However, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* Hence a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* Nevertheless, that does not mean that "the risk of real harm cannot satisfy the requirement of concreteness." *Id.* In fact, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.* at 342. In such cases, a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.*

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle for challenging Article III standing, which is a component of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *see Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175 (3d Cir. 2000). The burden of establishing jurisdiction rests with the party invoking federal court jurisdiction. *Spokeo*, 578 U.S. at 338; *Animal Sci. Prod., Inc. v. China Minmetals Corp.*,

3

654 F.3d 462, 470 (3d Cir. 2011). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citations omitted). "A facial attack 'contests the sufficiency of the complaint because of a defect on its face,' whereas a factual attack 'asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites.'" *Rock v. Greenspoon Marder, LLP*, No. 20-3522, 2021 WL 248859, at *2 (D.N.J. Jan. 26, 2021) (citing *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015)).

Where, as here, a party presents a facial attack, "'the Court must consider the allegations of the complaint as true,' much like a Rule 12(b)(6) motion to dismiss." *Id.* (citing *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006))). A facial challenge also requires the court to consider only "'the allegations of the complaint and documents referenced therein and attached thereto.'" *Id.* (citing *Gould Elec. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

2. Standing

Defendants argue that this Court lacks subject matter jurisdiction because Plaintiff's FDCPA claims do not allege that Defendants caused an injury-in-fact that is "concrete and particularized." Relying on decisions from the Seventh and Eleventh Circuits, Defendants insist that an FDCPA claim requires actual damages to constitute an "injury in fact." *See Smith v. GC Serv. Ltd Partnership*, 986 F.3d 708 (7th Cir. 2021) (concluding plaintiff had no standing to assert violation of FDCPA where no actual injury was alleged to have resulted from debt collector's failure to state how consumer may dispute debt's validity) and *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1000 (11th Cir. 2020) (finding plaintiffs who received collection letters enticing them to making payments on already time-barred debts lacked standing on FDPCA claim because they were not actually misled). These cases cited by Defendants are neither binding on this Court nor persuasive.

Moreover, while the Third Circuit has yet to directly address this issue, the overwhelming consensus in this district is that a plaintiff need not plead actual injury beyond the receipt of false or misleading information to "give rise to concrete, substantive injuries sufficient to establish Article III standing" to sue for violations of the FDCPA. *Rock*, 2021 WL 248859, at *3 (internal cite and quotations omitted) (ruling that allegation of failure to disclose how amount of debt was calculated was sufficient concrete intangible injury for plaintiff to assert § 1692e claim); *see also Bordeaux v. LTD Financial Services, L.P.*, No. 16-0243, 2021 WL 4438127, at *4 (D.N.J. Sept. 28, 2021) (finding injury to consumer's right to receive accurate and non-misleading information sufficed to confer standing to bring §§ 1692e and 1692f claims); *Saroza v. Lyons*,

4

*Doughty & Veldhuis, P.C.,* No. 17-523, 2021 WL 2549273, at *4 (D.N.J. June 22, 2021) (reasoning that where debt collection letter did not separate costs of collection from principal, plaintiff had standing to bring FDCPA claims given there was "no reason to depart from the well-reasoned opinions of other courts within this district"), *appeal filed* July 19, 2021; *Schultz v. Midland Credit Management, Inc.,* No. 16-4415, 2020 WL 3026531, at *3 (D.N.J. June 5, 2020) (concluding plaintiffs' receipt of allegedly false, deceptive, or misleading collection letters in violation of § 1692e conferred Article III standing even if plaintiff was not actually misled); *Hovermale v. Immediate Credit Recovery, Inc.,* No. 15-05646, 2018 WL 6322614, at *4 (D.N.J. Dec. 3, 2018) ("when a debt collector violates Section 1692e by providing false or misleading information, the informational injury that results—i.e., receipt of that false or misleading information—constitutes a concrete harm under *Spokeo*"); *Pisarz v. GC Services Limited Partnership,* No.16-4552, 2017 WL 1102636, at *4 (D.N.J. March 24, 2017) (collecting cases in which allegation of FDCPA violations constituted concrete injury necessary to confer standing); *Grubb v. Green Tree Servicing, LLC,* No. 13-7421, 2017 WL 3191521, at *7 (D.N.J. July 27, 2017) (finding §1692e violation to be concrete injury for standing despite plaintiff's inability to establish economic loss); *see also Jensen v. Pressler & Pressler,* 791 F.3d 413, 419 (3d Cir. 2015) (stating that to prevail on FDCPA claim, plaintiff need not "prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be.") (emphasis in original); *but see e.g., Oh v. Collecto, Inc.,* No. 20-01937, 2021 WL 3732881 (D.N.J. August 23, 2021) (deciding that plaintiff lacked actual harm and standing to assert FDCPA violation without addressing weight of authority in this district and relying on a Fair Credit Reporting Act case, *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021)).

  Despite this clear consensus, Defendants urge the Court to interpret the Third Circuit's decision in *Thorne v. Pep Boys Manny Moe & Jack Inc.,* 980 F.3d 879, 890-92 (3d Cir. 2020) as an adoption of the Eleventh Circuit's holding in *Trichell* that a statutory violation of the FDCPA alone is insufficient to confer Article III standing. The Court declines to do so. In *Thorne,* the Third Circuit made two passing references to *Trichell* before holding that the plaintiff lacked standing to sue her tire dealer for violating the National Traffic and Motor Vehicle Safety Act of 1966, 49 U.S.C. § 30101, *et seq.,* which requires tire dealers to help customers register their new tires with the manufacturer. The first reference to *Trichell* was in *Thorne's* examination of the "close relationship" prong of the *Spokeo* two-part inquiry. The Circuit concluded that neither products liability nor negligence per se was a historical analogue for the two forms of intangible harms alleged by the plaintiff: denial of tire registration assistance and increased risk of an accident were she unreachable due to the lack of registration upon a recall of her tires. *Thorne,* 980 F.3d at 890. It reasoned that negligence per se did not "obviate the need to show proximate causation or damages" just as the Eleventh Circuit had concluded that the "proffered historical tort analogues had 'no relationship to harms traditionally remediable in American or English courts' because the plaintiff had "jettisoned the bedrock elements of reliance and damages." *Id.* at 890-91 (citing *Trichell,*

5

964 F.3d at 998). *Thorne's* conclusion that harms from violation of a tire registration regulation do not have a close relationship to negligence per se does not speak to whether the harm of receiving false and misleading statements has a historical analogue. In fact, district courts in New Jersey have specifically found that the intangible harm of receiving false and misleading statements has a close relationship to "traditional causes of action for fraud and deceit." *See e.g., Hovermale,* 2018 WL 6322614, at *4; *Griffin v. Andrea Visgilio-McGrath, LLC,* No. 17-CV-0006, 2017 WL 3037387, at *6 (D.N.J. July 18, 2017).

The second reference to *Tricell* was when, in evaluating Congressional judgment under the *Spokeo* inquiry, the Third Circuit noted that the "real question" was "whether the alleged statutory violation is among the concrete harms Congress enacted the law to remedy." *Thorne,* 980 F.3d at 892. Citing *Trichell* as an example of a case where that question was answered in the negative, the Third Circuit ultimately determined that Congress did not intend to elevate the harm from unregistered tires to be a redressable injury. *Id.* In contrast, Congress clearly did intend to authorize a private cause of action against violators of the FDCPA. *See* 15 U.S.C. § 1692k. By passing the FDCPA, Congress elevated the right "to accurate disclosure to the status of a legally cognizable, redressable injury." *Hovermale,* 2018 WL 6322614, at *4; *Carney v. Goldman,* 2016 WL 7408849, at *5 (D.N.J. Dec. 22, 2016) ("Insofar as *Spokeo* directs the Court to consider whether an alleged injury-in-fact 'has traditionally been regarded as providing a basis for a lawsuit,' Congress has long provided plaintiffs with the right to seek redress from debt collectors for" alleged false, deceptive, and misleading statements and representations. (citing *In re Nickelodeon Consumer Privacy Litig.,* 827 F. 3d 262, 274 (3d Cir. 2016))).

Therefore, the Court rejects Defendants' efforts to extend to FDCPA claims *Thorne's* decision regarding standing to sue for tire registration violations. Absent clear indication from the Third Circuit that the receipt of allegedly misleading debt collection communication is not a concrete harm that confers standing, this Court will follow the clear weight of authority in this district. Consequently, the Court concludes that Plaintiff's receipt of purportedly misleading debt collection information in violation of § 1692e constitutes an injury-in-fact that confers Article III standing. Defendants' motion to dismiss for lack of standing is **denied.**

B. Rule 12(b)(6) Motion to Dismiss

1. Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.,* 542 F.3d 59, 64 (3d Cir. 2008). This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). That is, although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). While "[t]he plausibility standard is not akin to a probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Tellabs, Inc. v. Makar Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). "'[A] court may take judicial notice of the record from a previous court proceeding between the parties.'" *Keyes v. Nationstar Mortg., LLC,* No. 20-CV-02649, 2020 WL 6111036, at *5 (D.N.J. Oct. 16, 2020), *reconsideration denied,* 2021 WL 2651946 (D.N.J. June 28, 2021) (citing *Toscano v. Conn. Gen. Life Ins. Co.,* 288 F. App'x 36, 38 (3d Cir. 2008)).

### 2. Entire Controversy Doctrine and Res Judicata

*Res judicata* is a common-law doctrine that bars "relitigation of claims or issues that have already been adjudicated." *Velasquez v. Franz,* 123 N.J. 498, 505 (1991). "In essence, the doctrine of *res judicata* provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." *Id. Res judicata* precludes "'not only claims that were brought in a previous action, but also claims that could have been brought.'" *Marmon Coal Co. v. Dir., Off. of Workers' Comp. Programs,* 726 F.3d 387, 394 (3d Cir. 2013) (citing *Duhaney v. Att'y Gen.,* 621 F.3d 340, 347 (3d Cir. 2010) (internal quotation marks and citation omitted)).

"New Jersey's Entire Controversy Doctrine and traditional res judicata principles are blood relatives. The Entire Controversy Doctrine, codified at New Jersey Rule of Court 4:30A,[2] is essentially New Jersey's specific, and idiosyncratic, application of

---

[2] New Jersey Rule of Court 4:30A states in pertinent part:

7

traditional res judicata principles." *Rycoline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). "The Entire Controversy Doctrine embodies the notion that 'the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.'" *Id.* at 885 (citing *DiTrolio v. Antiles*, 142 N.J. 253, 267 (1995) (internal quotations and citation omitted)). "The primary consideration in determining if successive claims are part of the same controversy is whether the claims "'arise from related facts or from the same transaction or series of transactions.'" *Mason v. US Bank*, 2016 WL 7189828, at *4 (D.N.J. Dec. 12, 2016) (citing *DiTrolio*, 142 N.J. at 267). It is a "'commonality of facts, rather than [a] commonality of issues, parties, or remedies that defines the scope of the controversy.'" *Id.* (citing *DiTrolio*, 142 N.J. at 272).

Defendants argue that Plaintiff's claims regarding the inclusion and amount of attorney's fees in the Collection Action Judgment arose from the same transactional facts that were raised or could have been raised in the Collection Action and are therefore barred by New Jersey's Entire Controversy Doctrine. Defendants also contend that Plaintiff's claims are barred by *res judicata* because Plaintiff could have but failed to challenge the inclusion of the attorney's fees in the Collection Action where there was a final adjudication of the matter (a judgment and three writs) in favor of CACH.[3]

While the Collection Action was a suit by CACH against Plaintiff to recover on a debt owed on a credit card account, the matter before this Court is a putative class action in which Plaintiff alleges that Defendants violated the FDCPA by making false and misleading statements in their effort to collect an unpaid judgment. This suit is not, as Defendants characterize it, simply a collateral attack on the Collection Action Judgment couched as a different cause of action; Plaintiff does not challenge the validity of the underlying state court judgment's inclusion of attorney's fees. In fact, Plaintiff's FDCPA claim of false and misleading disclosures did not even arise until CACH issued the Collection Letter on March 24, 2021. Clearly, Plaintiff could not have raised her FDCPA claims in the earlier 2009 Collection Action. Moreover, although there has been a final judgment on the debt, there has been no disposition of the claim that Defendants, in

---

Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

[3] Defendants state that in the Collection Action, the court granted "LVNV" a Judgment, that the Writs validated "LVNV" as a judgment creditor, and that Plaintiff failed to object to the inclusion of attorney's fees in the judgment to be collected by "LVNV." Defs.' Br. in Support of Mot., at 12. The Court assumes that these references to "LVNV" were in error and were intended to be references to "CACH."

8

attempting to collect on a debt, issued false and misleading information about the character and amount of the debt. The present federal action is therefore not precluded by either *res judicata* or the Entire Controversy Doctrine.

Finally, Defendants argue for the first time in their reply brief that Plaintiff's FDCPA claim is also barred under *Rooker-Feldman*.[4] "The *Rooker–Feldman* doctrine divests federal courts of jurisdiction where a federal action would be the equivalent of an appellate review of a state court judgment." *Hogg's v. New Jersey*, 352 F. App'x 625, 629 (3d Cir. 2009) (internal quotations and citation omitted), *cert. denied* 559 U.S. 913 (2010). To support their position, Defendants argue that this case is no different than *Minton v. CACH, LLC*, 2014 WL 4764193 (E.D. Pa. Sept. 25, 2014). In *Minton*, the plaintiff alleged that the defendant had misstated the amount owed in violation of the FDCPA by including unlawful fees and interest that were part of the judgment entered by the state court. The court recognized that the determination of whether the judgment amount had been properly calculated would require it to "review and reject the state judgment," and also noted that the plaintiff "clearly identifie[d] the state court judgment as the source of his injury." *Minton,* 2014 WL 4764183, at * 4. Accordingly, the court held that the plaintiff's claim was an attempt to relitigate the award of interest and attorney's fees and was therefore barred by *Rooker-Feldman* and Pennsylvania preclusion law. *Id.*

*Minton* is inapposite. As noted earlier, Plaintiff does not challenge the state court's award of statutory attorney's fees as unlawful. The adjudication of this matter does not require the Court to review the state court's Collection Action Judgment. Rather, the source of Plaintiff's injury is Defendants' conduct. Therefore, this federal suit is an independent claim that is not precluded by *res judicata,* the Entire Controversy Doctrine, or *Rooker-Feldman* principles. Defendants' motion to dismiss Plaintiff's Amended Complaint on those grounds is **denied**.

### 3. Fair Debt Collection Practices Act

---

[4] "'It is well-established that a party cannot raise an argument for the first time in a reply brief.'" *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, No. 14-145, 2020 WL 3542305, at *2 (D.N.J. June 30, 2020) (quoting *Maliandi v. Montclair State Univ.*, No. 14-1398, 2017 WL 935160, at *5 (D.N.J. Mar. 9, 2017), *aff'd*, 2017 WL 3023205 (D.N.J. July 17, 2017)); *see also Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (finding that "[a]n issue is waived unless a party raises it in its opening brief"). "'A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues.'" *Dreyer v. Sheaffer*, No. 08-1132, 2009 WL 917829, at *3 (M.D. Pa. Apr. 2, 2009) (quoting *United States v. Martin*, 454 F. Supp. 2d 278, 281 n. 3 (E.D. Pa. Oct. 5, 2006)). Nonetheless, the Court will address the applicability of the Rooker-Feldman doctrine having granted Plaintiff's request for leave to respond in a sur-reply brief.

To succeed on an FDCPA claim, a plaintiff must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Knight v. AR Res., Inc.*, 2021 WL 5027989, at *2 (D.N.J. Oct. 29, 2021) (citing *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).

Plaintiff alleges that Defendants violated the FDCPA, 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(1) by failing to itemize or breakdown the amount of the debt and to explain that it was subject to increase due to interest, fees and costs. Plaintiff also contends Defendants violated §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10) by misrepresenting that a statutory attorney fee was owed to CACH rather than to the attorney for the prevailing party in the Collection Action.

Section 1692e provides in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

(2) The false representation of--
　(A) the character, amount, or legal status of any debt; or
. . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C.A. § 1692e.

Section 1692g states in relevant part:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt; . . .

15 U.S.C.A. § 1692g(a)(1).

"A communication is deceptive for purposes of the Act if it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008) (internal quotation marks and citation omitted). To protect both gullible and shrewd consumers, "[c]ourts analyze FDCPA claims under the 'least sophisticated debtor' standard." *Knight v. Midland Credit Mgmt. Inc.*, 755 F. App'x 170, 174 (3d Cir. 2018) (citing *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015)); *Dotson v. Nationwide Credit, Inc.*, 828 Fed. App'x 150, 152 (3d Cir. 2020). Thus, a "'specific plaintiff need not prove that she was actually confused or misled.'" *Id.* (citing *Jensen*, 791 F.3d at 419 (emphasis in original)). "Instead, the focus is on whether the objective least sophisticated debtor would be deceived or misled by a debt collector's statement in a communication." *Id.* "'[W]hether the least sophisticated debtor would be misled by a particular communication is a question of law that may be resolved in a Rule 12(b)(6) motion.'" *Marucci v. Cawley & Bergmann, LLP*, 66 F. Supp. 3d 559, 562 (D.N.J. 2014) (citing *Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. 07-5139, 2008 WL 2885887 at *3 (D.N.J. July 23, 2008)).

    a. <u>Itemization of Debt</u>

Plaintiff argues that the Collection Letter failed to disclose that the amount of debt included an amount for interest, fees, and/or other charges. *See* Amended Compl., ¶ 46-47. Additionally, Plaintiff asserts in her Memorandum of Law in Opposition to Defendants' Motion to Dismiss that the Collection Letter should have included an explanation of how the "Total Due: $4,424.60" was calculated and whether the terms "Total Due," "balance due," or "unpaid balance" were being used interchangeably or referred to separate figures. In support of her position, Plaintiff cites *Grubb*, 2017 WL 3191521. In *Grubb*, the debt collector sent two different collection notices to the plaintiff stating different mortgage amounts owed. The court held that given the various figures, "the least sophisticated debtor could reasonably be confused as to what amount was due under the loan" and that "due to the accumulation of interest, the amount due under the original loan and the amount being collected, typically constitute different figures. Thus, a debt collection letter which solely provides for the "total due," without providing an explanation as to how that amount was calculated, fails to provide the least sophisticated debtor with an adequate basis to dispute whether the alleged debt was properly configured, and, in turn, whether that debt should be challenged." *Grubb*, 2017 WL 3191521, at *12.

11

As Defendants note, here, unlike in *Grubb*, there is no other debt collection notice, let alone a contradictory one, nor differing numbers and terms in the Collection Letter that would have confused the least sophisticated debtor. Even the least sophisticated consumer would have reasonably read the terms "Total Due," "balance due," or "unpaid balance" to refer to the same debt amount rather than three different amounts. *See Ardino v. Fin. Recovery Servs., Inc.*, No. 11-6520 WJM, 2012 WL 2036817, at *2 (D.N.J. June 6, 2012) ("A collection letter will not meet the requirements of Section 1692g(a) where the validation notice is overshadowed or contradicted by accompanying messages or notices from the debt collector.").

Absent any such contradictory messages or notices from the debt collector, where the debt is static, *see* discussion below, the Court agrees with Defendants that the FDCPA did not require Defendants to inform Plaintiff of the components of her debt including a breakdown of the amount for interest, costs and/or fees. *See e.g., Bodine v. First. Nat. Collection Bureau, Inc.*, 2010 WL 5149847, at n.1 (D.N.J. Dec. 13, 2010) (declining to address plaintiff's argument that balance failed to distinguish between principal and interest but noting that § 1692g(a)(1) only required that written notice of debt contain "the amount of the debt," which collection letter did); *Scioli v. Goldman & Warshaw P.C.*, 651 F. Supp. 2d 273, 281 (D.N.J. 2009) ("the Court does not hold that a debt collector *must* itemize the fees and costs it seeks in order to comply with the FDCPA.").

### b. Accrual of Interest, Fees, Costs

Next, Plaintiff's claim that in violation of the FDCPA, the Collection Letter failed to disclose that "the Maryland National Bank obligation was subject to increase" due to the continued accrual of interest, fees, and costs. *See* Amended Compl., ¶¶ 56-57. Defendants, however, assert that the failure to include an amount for interest and fees in the Collection Letter did not violate the FDCPA since interest and fees were not actually accruing.

Defendant does not dispute that if the debt does in fact include interest and fees that continue to accrue, a debt collector must inform the debtor of that fact. *See Grubb*, 2017 WL 3191521, at *12 (holding that debt collection notice must explain that the "amount of the debt" may increase where debt continued to accumulate interest or fees); *Marucci v. Cawley & Bergmann, LLP*, 66 F. Supp. 3d 559, 567 (D.N.J. 2014) (concluding that where interest continued to accrue, § 1692g(a)(1) of FDCPA required debt collector to disclose accrual of interest to satisfy obligation to state "the amount of the debt"); *Smith*, 2008 WL 2885887 (finding plaintiff stated a claim for violation of §§1692g(a)(1) and 1692e(10) where debt collection letter did not specify that interest was accruing on the unpaid balance or the date on which the outstanding interest was calculated because "least sophisticated debtor" might believe that balance was static and fully paid regardless of when payment is made); *see also Rock*, 2021 WL 248859

(rejecting claim that failure to disclose how debt was calculated violated 1692g and 1692e(2)(A) because fluctuations in amount of debt were covered by "safe harbor" language that amount due may be greater due to "interest, late charges, and other charges that may vary from day to day.").

In contrast, where the debt is static, the debt collector need not disclose that interest, fees, or costs are not accruing because payment in full of the static amount would satisfy the debt and therefore is not misleading. *See Dotson*, 828 F. App'x at 153 ("'[I]f a collection notice correctly states a consumer's balance without mentioning interest or fees, and no such interest or fees are accruing, then the notice will ... [not] fail to state accurately the amount of the debt under Section 1692g. If instead the notice contains no mention of interest or fees, and they *are* accruing, then the notice will run afoul of the requirements of both Section 1692e and Section 1692g'") (citing *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 215 (2nd Cir. 2018)); *see also Hopkins v. Collecto, Inc.*, No. 19-18661, 2020 WL 1891180, at *2 (D.N.J. Apr. 16, 2020) (WJM), *aff'd*, 994 F.3d 117 (3d Cir. 2021) (this Court adopting Second Circuit's reasoning that "'a collection notice that fails to disclose that interest and fees are not currently accruing on a debt is not misleading within the meaning of Section 1692e.'") (citing *Taylor v. Financial Recovery Servs., Inc.*, 886 F.3d 212, 313 (2d Cir. 2018))).

Likewise, where a collection notice proposes a settlement in full satisfaction of the debt, the debt is static and thus, a failure to disclose that interest or fees continue to accrue is not misleading. *See Cortez v. Forster & Garbus, LLP*, 999 F.3d 151, 155 (2d Cir. 2021) (citing *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 949 (7th Cir. 2004)). As explained by the Second Circuit:

> As with debtors faced with a collection notice for a static debt, who are not prejudicially misled by the collector's failure to disclose that interest is *not* accruing, debtors faced with a settlement offer are not misled by the failure to disclose that interest *is* accruing because in both situations, payment of the amount indicated in a collection notice would extinguish the debt.

*Cortez*, 999 F.3d at 155; *see also Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 77 (2d Cir. 2016) (holding debt collector not subject to liability under §1692e for failure to disclose that consumer's balance may increase due to interest and fees if collection notice clearly states debt holder will accept payment of stated amount in full satisfaction of debt).

In this case, the Collection Letter contained a "Settlement Offer" on the Judgment that would "resolve" the "unpaid balance" and "settle" Plaintiff's account for "65% of the balance due as stated above." This offer to settle an outstanding debt cannot reasonably be read to have more than one meaning. The least sophisticated debtor would not be

misled or confused that full payment of the settlement amount would discharge the entire debt even if Plaintiff is correct that interest and fees continue to accrue. There is no claim that this sole reasonable interpretation was not accurate. Plaintiff cannot claim as a matter of law that in this instance, the Collection Letter's failure to indicate whether the debt continued to accrue interest, fees, or costs violated the FDCPA.

### c. Statutory Attorney Fee

Plaintiff claims that Defendants violated the FDCPA by misrepresenting that the statutory attorney's fee assessed pursuant to N.J.S.A. § 22A:2-42 was owed to CACH rather than to its attorney. Amended Compl., ¶¶ 51-55.

N.J.S.A. § 22A:2-42 states:

> There shall be taxed by the clerk of the Superior Court, Law Division, Special Civil Part in the costs against the judgment debtor, a fee to the attorney of the prevailing party, of five per centum (5%) of the first five hundred dollars ($500.00) of the judgment, and two per centum (2%) of any excess thereof.

"In Special Civil Part, an award of fees is not only permitted, but *required*, as part of the taxation of costs in favor of a prevailing plaintiff" pursuant to statute. *Diaz v. Midland Funding, LLC*, No. 17-1925, 2017 WL 4236060, at *3 (D.N.J. Sept. 22, 2017). Thus, a debt collector's inclusion of statutory counsel fees as part of the judgment is not misleading and does not violate the FDCPA. *See id.* (dismissing FDCPA claim where plaintiff alleged that debt collector's "wherefore" clause in debt collection complaint demanding N.J.S.A. § 22A:2-42 statutory attorney's fees was misleading); *Garcia v. Midland Funding LLC*, No. 16-5248, 2017 WL 215971 (D.N.J. Jan. 17, 2017) (finding debt collector did not violate FDCPA by demanding attorney's fees under N.J.S.A. 22A:2-42 in collection lawsuit); *Scioli*, 651 F. Supp. 2d 273 (holding that debt collector's inclusion in court summons of specific sum of statutory attorney's fees pursuant to N.J.S.A. § 22A:2-42 was not FDCPA violation).

Because attorney's fees are properly included as part of the judgment, Defendants argue that a creditor does not violate the FDCPA by collecting on a judgment inclusive of attorney's fees. Plaintiff insists that only the attorneys who commenced and prosecuted the Collection Action are entitled to the statutory attorney's fees, and therefore, Defendants violated the FDCPA by "failing to disclose that the balance included the fee of $93.05 *owed to the attorney of the prevailing party*, CACH LLC." Pl.'s Opp. Br. at 21. In so arguing, Plaintiff relies on the statement in *Bancredit, Inc. v. Bethea*, 65 N.J. Super. 538, 552 (App. Div. 1961): "The 5% [statutory fee] Allowance … is tied to the successful prosecution of suit in the county district court, and *is payable directly to the attorney*." (emphasis added).

14

Plaintiff's claim fails as a matter of law. First, as discussed above, Defendants were not required to itemize the debt to show the inclusion of statutory counsel fees. *See Garcia*, 2017 WL 215971, at * 4 ("The FDCPA simply does not require a debt collector to itemize the attorney's fees that are sought pursuant to N.J.S.A. 22A:2-42"). Second, that such fees are "payable directly to the attorney" does not indicate that payment to the attorney must be made directly from the debtor; indeed, fees are recoverable under N.J.S.A. 22A:2-42 as an "attempt to *reimburse the creditor*" not for the full reasonable costs of counsel's services, but for "nominal and essentially automatic charges, which allow *any successful judgment creditor* in the Special Civil Part to recapture at least a small portion of the attorney expenses that it incurred in procuring that final judgment." *Chase Bank USA, N.A. v. Staffenberg,* 419 N.J. Super. 386, 403, 405 (N.J. Super. 2011) (emphasis added). Finally, nothing proffered by Plaintiff supports her suggestion that statutory counsel fees attach to a separate judgment collectable only by the prevailing attorney. Defendants' efforts to collect on a judgment inclusive of statutory fees did not violate the FDCPA.

### d. Naming of Debt Collector

In her opposition brief, Plaintiff asserts for the first time that because the Collection Action was commenced by CACH of New Jersey, LLC, the Debt Collection Letter's reference to the creditor as CACH, LLC was false and misleading. *See* Pl.'s Opp'n Br. at 25-26. However, because this is not a claim set forth in Plaintiff's pleading, it may not be considered on a motion to dismiss. *See Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 290 (3d Cir. 2014) ("Generally, a court considering a motion to dismiss under Rule 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency."). The Court does nonetheless note that to be actionable under the FDCPA, the failure to identify the correct owner of the debt must be material. *See Grubb*, 2017 WL 3191521, at *12 ("defendant's failure to correctly identify the owner of the debt was not material because 'the name of the owner of the debt would not have influenced even the least sophisticated debtor.'" (explaining holding of *Cohen v. Dynamic Recovery Solutions*, 2016 2016 WL 4035433, at *5 (D.N.J. July 26, 2016))).

In sum, for the reasons discussed above, Plaintiff has failed to state a claim that Defendants violated the relevant provisions of § 1692e or § 1692g by: 1) failing to itemize the debt and show that it included accrued interest, fees, and costs; 2) not disclosing that the debt was subject to increase due to interest, fees, and costs; or 3) misrepresenting that a statutory attorney fee was owed to CACH rather than to the attorney for the prevailing party in the Collection Action.

## III. Conclusion

For the reasons noted above, Defendants' 12(b)(1) motion to dismiss for lack of standing is **denied.** Defendants' 12(b)(6) motion to dismiss on the basis of *res judicata*, the Entire Controversy Doctrine, and *Rooker-Feldman* is **denied.** Defendants' 12(b)(6) motion to dismiss for failure to state an FDCPA claim is **granted.** Plaintiff's Amended Complaint is **dismissed.**

                                           */s/ William J. Martini*
                                      **WILLIAM J. MARTINI, U.S.D.J.**

Date: January 18, 2022